## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTOPHER BUCKENBERGER** | **CIVIL ACTION** |
| **versus** | **NO. 10-1194** |
| **BURL CAIN, WARDEN, LSP** | **SECTION: "A"(3)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Christopher Buckenberger, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On March 15, 2007, he was convicted of attempted second degree murder, attempted forcible rape, second degree kidnapping, and two counts of public

intimidation.[1]  On March 22, 2007, he was sentenced to the following terms of imprisonment: twenty-five years on the attempted second degree murder conviction;[2] twenty years on the attempted forcible rape conviction;[3] twenty years on the second degree kidnapping conviction;[4] and five years on each of the public intimidation convictions.  It was ordered that the sentences be served concurrently.[5]  On May 29, 2007, he was found to be a third offender and was resentenced as such on the attempted second degree murder conviction to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[6]  On February 8, 2008, the Louisiana First Circuit Court of Appeal affirmed petitioner's convictions, habitual offender adjudication, and sentences.[7] The Louisiana Supreme Court then denied petitioner's related writ application on November 21, 2008.[8]

---

[1] State Rec., Vol. IV of VI, transcript of March 15, 2007, pp. 182-83; State Rec., Vol. I of VI, minute entry dated March 15, 2007; State Rec., Vol. II of VI, jury verdict forms.

[2] The trial court ordered that sentence be served without benefit of parole, probation, or suspension of sentence.

[3] With respect to that sentence, the court recommended that petitioner not be eligible for diminution of sentence for good behavior.

[4] It was ordered that the first two years of that sentence be served without benefit of parole, probation, or suspension of sentence.

[5] State Rec., Vol. IV of VI, transcript of March 22, 2007; State Rec., Vol. I of VI, minute entry dated March 22, 2007.

[6] State Rec., Vol. I of VI, minute entry dated May 29, 2007.

[7] State v. Buckenberger, 984 So.2d 751 (La. App. 1st Cir. 2008) (No. 2007 KA 1422); State Rec., Vol. V of VI.

[8] State v. Buckenberger, 996 So.2d 1104 (La. 2008) (No. 2008-KO-0877); State Rec., Vol. V of VI.

On July 12, 2009, petitioner filed with the state district court an application for post-conviction relief.[9]  The court ruled that it would take no action on that application because it was "indecipherable."[10]  Petitioner apparently challenged that ruling by filing a writ application with the Louisiana First Circuit Court of Appeal; however, that application was denied on April 12, 2010.[11]  Petitioner thereafter filed a related writ application with the Louisiana Supreme Court, which was docketed in case number 10-OK-966.[12]  On October 25, 2010, this Court was advised by the Clerk of the Louisiana Supreme Court that the writ application is still pending before that court.

On April 19, 2010, petitioner filed the instant federal application for *habeas corpus* relief.  In his application, he asserts seven claims:

1. Petitioner received ineffective assistance of counsel;

2. There was insufficient evidence to support petitioner's conviction;

3. Petitioner's arrest was unlawful;

4. Petitioner's rights under the Confrontation Clause were violated;

---

[9] State Rec., Vol. V of VI.

[10] State Rec., Vol. V of VI, Order dated October 12, 2009.

[11] State v. Buckenberger, No. 2010 KW 0432 (La. App. 1st Cir. Apr. 12, 2010) (unpublished); State Rec., Vol. V of VI.

[12] State Rec., Vol. VI of VI.

5.      Petitioner's rights under the Double Jeopardy Clause were

violated;

6.      The bill of information was defective; and

7.      Petitioner was denied his right to a speedy trial.

<u>Timeliness</u>

The state argues that petitioner's federal application is untimely.  The Antiterrorism

and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his

Section 2254 claims within one (1) year of the date on which his underlying criminal judgment

becomes "final."  Under the AEDPA, a judgment is considered "final" upon the expiration of time

for seeking direct review.  28 U.S.C. § 2244(d)(1)(A).[13]

As noted, the Louisiana Supreme Court denied petitioner's writ application on direct

review on November 21, 2008.  Therefore, under § 2244(d)(1)(A), his convictions and sentences

became "final" on February 19, 2009, when his period expired for seeking a writ of certiorari from

the United States Supreme Court.  <u>See</u> <u>Roberts v. Cockrell</u>, 319 F.3d 690, 694 (5th Cir. 2003); <u>Ott

v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999); <u>Chester v. Cain</u>, Civ. Action No. 01-1958, 2001 WL

1231660, at *3-4 (E.D. La. Oct. 15, 2001); <u>see also</u> U.S. Sup. Ct. R. 13(1).  Accordingly, his one-

year period for seeking federal *habeas corpus* relief commenced on that date and expired one year

later, unless that deadline was extended by tolling.

---

[13]    Although § 2244(d)(1) has alternative provisions providing for other events which can trigger
the commencement of the statute of limitations, the alternative provisions are not applicable in the
instant case.

The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court.  28 U.S.C. § 2244(d)(2).  After one hundred forty-two (142) days of the limitations period elapsed, petitioner filed a post-conviction application with the state district court on July 12, 2009.[14]  If that application was properly filed, the limitations period was tolled by its filing and remains tolled for the duration of the post-conviction proceedings, which are currently ongoing.  See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004).

The state argues that the post-conviction application was not properly filed. However, the United States Fifth Circuit Court of Appeals has explained that "[a] state application is 'properly filed' if it meets certain formal requirements and if the court in which it is filed has jurisdiction to consider it."  Godfrey v. Dretke, 396 F.3d 681, 685 (5th Cir. 2005).  Applications meeting such procedural requirements are properly filed even if they are utterly meritless.  See Villegas v. Johnson, 184 F.3d 467, 469-73 (5th Cir. 1999).

In the instant case, petitioner filed his state post-conviction application on the proper form, in the proper court, and within the deadlines prescribed by state law.  Although the trial court indicated that it was taking no action on the application because "its bases and relief sought are

---

[14]  The United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Petitioner's application was signed July 12, 2009, and, for the purposes of this decision, the Court will assume that it was given to prison authorities on that same date.

indecipherable," the court obviously accorded the application some measure of review in order to reach that determination.[15]   Under these circumstances, and out of an abundance of caution, the undersigned will assume that the state application was properly filed so as to trigger the tolling provisions of § 2244(d)(2).  Further, because the limitations period has remained tolled since that application was filed, and, because only one hundred forty-two (142) days of the limitations period elapsed prior to that filing, the undersigned finds that the federal application was timely filed.

Exhaustion

The state next argues that the application must be dismissed because petitioner failed to exhaust his state court remedies.  Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his remedies in state court before seeking *habeas corpus* relief from the federal courts.  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).  Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules.  Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).

At a minimum, it appears that petitioner has never given the Louisiana Supreme Court a fair opportunity to consider his double jeopardy claim.  That claim was not raised on direct review.  Further, petitioner's post-conviction proceedings are still pending, and, in any event, it does not appear that the claim was raised in those proceedings.  As a result, petitioner's federal

---

[15]   Moreover, it is noted that the trial court expressly advised petitioner that he could seek review of the ruling by filing an application for a supervisory writ with the Court of Appeal.

application is, at best, a mixed petition and therefore subject to dismissal on that basis.  See Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998) ("A habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice.").

That said, a federal court has the authority to deny *habeas* claims on the merits, regardless of whether petitioner exhausted state court remedies and whether exhaustion is waived by the state.  28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civil Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).  Because petitioner's claims clearly have no merit, the undersigned finds the better course is simply to consider and reject the claims on that basis.

<u>Standards of Review</u>

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of law, questions of fact, and mixed questions of law and fact.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and pure questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 2010 WL 2787096 (U.S. Oct. 4, 2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Courts cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

<u>Facts</u>

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> During the afternoon of February 22, 2006, Michael Shane Stephens was fishing at the Madisonville Boat Launch.  He saw a woman, later identified as the victim, C.G.,[FN1] get out of a car and squat beside it.  Stephens testified that he saw the defendant "attempting to run [the victim] over several times" with the car. Stephens also heard the defendant tell the victim, "[a]s soon as I catch you, I'm going to kill you"  The defendant chased the victim for five or ten minutes in his vehicle.  After she went between some parked vehicles, the defendant continued the chase on foot, ultimately catching the victim and slamming her to the ground.  The victim was bleeding from the top of her head, her face, and her shoulder.

Stephens attempted to use his cellular telephone to summon help and told another bystander to get the police.

> [FN1]  The victim is referenced herein only by her initials.  See La. R.S. 46:1844 W.

Madisonville Police Officer Hayward Jarrell arrived at the scene and found the defendant on top of the victim in his vehicle. The defendant had his hands around the victim's neck.  The victim's shirt was pulled over her head, exposing her breasts, and the defendant's pants were down, exposing his bare buttocks. The victim was hysterical, and her face, elbows, and knees were bleeding.

The defendant was handcuffed.  He began kicking and spitting and told Officer Jarrell and Stephens, "I'm going to kill all of you all[.] ...  I done twelve years at Angola, and I'll be – I'm going to kill you all.  I'm not scared of you all."

The victim told Officer Jarrell that she had met the defendant in Shreveport.  She traveled with him to Bogalusa and stayed with him for a short period of time, but she had become a hostage because he threatened to kill her if she tried to leave him.  The victim also told Officer Jarrell that the defendant had tried to run over her with his car, and after he caught her, he knocked her to the ground, dragged her to his car by her hair, and was taking her clothes off when he was interrupted.  Officer Jarrell detected the odor of alcohol on both the victim's and the defendant's breaths.  However, he did not believe that the victim was intoxicated because her speech was not slurred.

Over defense objection, the State also presented records and testimony concerning the defendant's commission of forcible rape against C.L.[FN2] on November 1, 1981, and against L.H.[FN3] on November 9, 1981.  C.L. testified that on November 1, 1981, she agreed to give the defendant a ride in her car after he told her his friend had his car keys and he needed a ride to the friend's home to get them.  After directing C.L. to a secluded area, the defendant told her to stop the vehicle so he could use the bathroom.  When the defendant returned to the car, he demanded that C.L. exit the vehicle. When she refused, the defendant grabbed her by the hair and began hitting her.  After forcing C.L. out of her car, the defendant raped her.

> [FN2]  This victim is referenced herein only by her initials.  See La. R.S. 46:1844 W.

– 10 –

[FN3]  This victim is referenced herein only by her initials.  See La. R.S. 46:1844 W.

L.H. testified that in November of 1981, she agreed to give the defendant a ride in her car after he told her his car had been towed away.  After directing L.H. to a secluded area, the defendant told her to stop the vehicle so he could use the bathroom.  When the defendant returned to the car, he told L.H. that it was "[t]ime for us to have sex."  When L.H. refused to have sex with the defendant, he started strangling her and hitting her.  When L.H. begged the defendant to release her, he told her to stop begging or he would kill her.  The defendant then raped L.H. in her car.

The defendant also testified at trial.  He conceded he had previously been convicted of simple escape, forcible rape, second degree battery, and sexual battery.  However, he denied attempting to kill and rape the victim in connection with the instant offenses.  The defendant claimed he and the victim had been staying together at the Sportsman Inn in Bogalusa and had been working together.  He claimed on the day of the incident, he fell asleep after he and the victim had been drinking in his car.  He claimed he woke up when the victim got out of his car and slammed the door.  The defendant stated the victim was intoxicated and was upset because he was unable to have sex with her due to his erectile dysfunction, a condition from which he claimed he had suffered since 1975.  The defendant explained the pants he was wearing were too big for him and would fall down if he got out of the car, so he was following the victim with his car.  He claimed the victim fell down, not because he pushed her, but because she was drunk.  He claimed he was just talking to the victim in the car when Officer Jarrell arrived on the scene.  He claimed his pants fell down because they were wet from his swimming in them.  The defendant claimed that, after he politely asked to use a cellular telephone to call an attorney, Officer Jarrell threw him to the ground.  He claimed he told Officer Jarrell, "Look, mister, I've been in Angola and I know what that game is, and I've got a past record."  The defendant also claimed he threatened to sue Officer Jarrell, telling him he was "treating [the defendant] wrong" and "doing wrong."  The defendant also claimed he had an alibi for the dates he allegedly raped C.L. and L.H., explaining his guilty pleas to those offenses were involuntary.[16]

---

[16]  Buckenberger, 984 So.2d at 754-55; State Rec., Vol. V of VI.

<u>Ineffective Assistance of Counsel</u>

Petitioner first claims that he received ineffective assistance of counsel.  The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  <u>See</u> <u>Crockett v.</u>

McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  For the following reasons, the Court finds that neither of those conditions is met in the instant case.

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's ineffective assistance of counsel claim, holding:

> The defendant challenges defense counsel's decision to raise the issue of defendant's competency.  Because the record permits definitive resolution of defendant's claim of ineffective assistance of counsel, we will address it on appeal.  See State v. Miller, 99-0192 (La. 9/6/00), 776 So.2d 396, 411, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001).  A claim of ineffectiveness of counsel is analyzed under the two-pronged test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S.

668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment.  Secondly, the defendant must prove that the deficient performance prejudiced the defense.  This element requires a showing that the errors were so serious that defendant was deprived of a fair trial; the defendant must prove actual prejudice before relief will be granted.  It is not sufficient for defendant to show that the error had some conceivable effect on the outcome of the proceeding.  Rather, he must show that but for the counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different.  Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components.  State v. Serigny, 610 So.2d 857, 859-860 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1263 (La. 1993).

At a pretrial hearing, defense counsel indicated he moved for a competency hearing after talking to the defendant at the jail and because the defendant advised him that he (the defendant) had been the victim of head trauma when he was young.  Defense counsel's decision to move for a competency hearing was clearly strategic.  Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, that must be made before and during trial rest with an accused and his attorney.  The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel.  State v. Folse, 623 So.2d 59, 71 (La.App. 1st Cir. 1993).[17]

Assuming that petitioner is asserting the same claim here,[18] the Court finds that the claim should likewise be denied in this proceeding.  Petitioner does not explain, and this Court cannot surmise, how he was conceivably prejudiced by counsel's motion for a competency hearing.

---

[17]  Buckenberger, 984 So.2d at 758-59; State Rec., Vol. V of VI.

[18]  In his federal application, petitioner simply lists his ineffective assistance claim without explanation.

Petitioner simply has not made the required showing that there is a reasonable probability that the result of the proceeding would have been different if only defense counsel had not made such a motion.  Accordingly, the claim necessarily fails.

To the extent that petitioner believes his counsel was ineffective in some other respect, his claim nevertheless still fails.  He has not identified any other basis for an ineffective assistance claim, and "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000); see also Baxter v. Quarterman, 270 Fed. App'x 313, 314 (5th Cir. 2008); Orange v. Cain, Civ. Action No. 06-10761, 2009 WL 938909, at *20 (E.D. La. Apr. 6, 2009).

<u>Sufficiency of the Evidence</u>

Petitioner next claims that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> [T]he defendant argues the State presented insufficient evidence to support his convictions for attempted second degree murder, attempted forcible rape, and second degree kidnapping.[FN4]  He further argues the State substituted the testimony of two alleged rape victims from the early 1980s for the testimony of the victim.
>
>> [FN4]   The defendant does not challenge the sufficiency of the evidence in regard to Counts IV and V.
>
> The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt.  In conducting this review, appellate courts must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the

evidence tends to prove" in order to convict, every reasonable hypothesis of innocence is excluded.  State v. Wright, 98-0601 (La.App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157, 2000-0895 (La. 11/17/00), 773 So.2d 732 (quoting La. R.S. 15:438).

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution.  When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.  Wright, 730 So.2d at 487.  When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt.  State v. Captville, 448 So.2d 676, 680 (La. 1984).

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27 A.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1 A(1).

Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.  La. R.S. 14:41 A.  Forcible rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.  La. R.S. 14:42.1 A(1).

Second degree kidnapping is the forcible seizing and carrying of any person from one place to another when the victim is physically injured or sexually abused; or the imprisoning or forcible secreting of any person when the victim is physically injured or sexually abused.  La. R.S. 14:44.1 A(3), B(1), B(3).

Louisiana Code of Evidence article 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.

Louisiana Code of Evidence article 412.2 provides:

A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.

C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.

Article 412.2 was a legislative response to earlier decisions from the Louisiana Supreme Court refusing to recognize a "lustful disposition" exception to the prohibition of other crimes evidence under La.Code Evid. 404. The language of Article 412.2 closely follows Fed.R.Evid. 413, with the proviso that the evidence addressed therein " may be admissible ... subject to the balancing test provided in Article 403." State v. Williams, 2002-1030 (La. 10/15/02), 830 So.2d 984, 986-987. Thus, the jurisprudence interpreting the federal rule is highly instructive. See Wright, 730 So.2d at 489.

The federal courts have determined that Fed.R.Evid. 413 is based upon the premise that evidence of other sexual assaults is highly relevant to prove the propensity to commit like crimes and

often justifies the risk of unfair prejudice. The federal courts have concluded that Rule 413 supersedes Fed.R.Evid. 404(b)'s other crimes evidence restriction and allows the government to offer evidence of a defendant's prior conduct for the purpose of demonstrating a defendant's propensity to commit the charged offense. The federal courts have stated that there is no inherent error in admitting evidence under Rule 413 that would be inadmissible under Rule 404(b). If Rule 413 evidence was always too prejudicial under Rule 403, Rule 413 would never lead to the introduction of evidence. See State v. Olivieri, 2003-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 218.

After a thorough review of the record, we are convinced the evidence viewed in the light most favorable to the State proved, beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence, all of the elements of attempted second degree murder, attempted forcible rape, and second degree kidnapping. The verdicts rendered against the defendant indicate the jury accepted the testimony of the State's witnesses and rejected the testimony of the defendant. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Lofton, 96-1429 (La.App. 1 Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La. 10/17/97), 701 So.2d 1331. The jury reasonably rejected the hypothesis of innocence presented by the defendant's testimony (that the defendant was trying to calm the victim who was upset with him because he could not have sex with her), and the evidence did not support another hypothesis that raised a reasonable doubt. In reviewing the evidence, we cannot say that the jury's determinations were irrational under the facts and circumstances presented to them. See State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662. Further, evidence of the defendant's commission of crimes involving sexually assaultive behavior against C.L. and L.H. was admissible at trial. The high probative value of the evidence in regard to the defendant's propensity to use force to rape women in and near vehicles was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time.

This assignment of error is without merit.[19]

---

[19] Buckenberger, 984 So.2d at 755-57; State Rec., Vol. V of VI.

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that petitioner has made no such showing.

Under federal law, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added).  Moreover,  Louisiana's circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.  Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La.

Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. 2010).

   For the reasons noted by the state court, the evidence presented in the instant case, viewed in the light most favorable to the prosecution, was clearly sufficient for any rational trier of fact to find petitioner guilty beyond a reasonable doubt.  Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, this Court should defer to the state court's decision rejecting that claim.

Unlawful Arrest/Defective Bill of Information

   Petitioner also claims that his arrest was unlawful because he was not afforded a timely probable cause hearing.  In a related claim, he further argues that the failure to afford such a hearing rendered the bill of information defective.  On direct appeal, the Louisiana First Circuit Court of Appeal rejected those claims, holding:

> A law enforcement officer effecting an arrest of a person without a warrant shall promptly complete an affidavit of probable cause supporting the arrest of the person and submit the same to a magistrate. Persons continued or remaining in custody pursuant to an arrest made without a warrant shall be entitled to a determination of probable cause within forty-eight hours of arrest. La.Code Crim. P. art. 230.2 A.  If a probable cause determination is not timely made in accordance with the provisions of Article 230.2 A, the arrested person shall be released on his own recognizance. La.Code Crim. P. art. 230.2 B.
>
>  Prior to trial, the defendant moved pro se for dismissal of the charges against him, arguing, inter alia, that he had been denied a forty-eight hour probable cause determination. At the hearing on the motion, defense counsel advised the court that the defendant was

– 20 –

challenging the holding of the probable cause hearing on February 27, five days after his arrest. The trial court denied the motion to dismiss, and we find no error. Any right to release was waived once the probable cause determination was made. See State v. Bouie, 598 So.2d 610, 611 (La.App. 4th Cir.1992) ("prevailing case law maintains that a delay is not grounds for arrest of judgment or a new trial, and that once a defendant has proceeded to a significant judicial event, such as a preliminary hearing where probable cause is found, the defendant waives any rights to release.").[20]

Petitioner clearly is not entitled to *habeas corpus* relief based on his claim that the state failed to afford him a probable cause hearing within forty-eight hours of his arrest. "[I]llegal arrest or detention does not void a subsequent conviction." Gerstein v. Pugh, 420 U.S. 103, 119 (1975). "[A] conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." Id.; see also United States v. Quimby, 636 F.2d 86, 89 (5th Cir. 1981) ("A defendant cannot upset his conviction on the argument no probable cause was previously shown."); Wright v. Lensing, Civ. Action No. 92-1753, 1993 WL 8327, at *2 (E.D. La. Jan. 14, 1993) ("Federal law is also clear that a conviction, once lawfully obtained, is not rendered subject to attack simply because the defendant was detained pending trial without a determination of probable cause."). Accordingly, a claim that a state failed to afford a petitioner a mandatory probable cause hearing is not cognizable under § 2254. Montoya v. Scott, 65 F.3d 405, 421 (5th Cir. 1995); Nicholson v. Strange, No. 3:05CV137, 2006 WL 726650, at *5 (D. Conn. Mar. 14, 2006).

To the extent that petitioner is claiming that the failure to afford him a timely probable cause hearing rendered the bill of information defective, that claim fares no better. "[A]

---

[20] Buckenberger, 984 So.2d at 758; State Rec., Vol. V of VI.

judicial hearing is not prerequisite to prosecution by information."  Gerstein, 420 U.S. at 119; see

also Liner v. Phelps, 731 F.2d 1201, 1204 (5th Cir. 1984); Gibbs v. Phelps, Civ. Action No. 07-36,

2008 WL 2019363, at *7 (D. Del. May 9, 2008) ("[A] State does not violate the Fourteenth

Amendment if it prosecutes by information without holding a preliminary hearing.").

Confrontation Clause

Petitioner next claims that his rights under the Confrontation Clause were violated.

On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> The defendant argues that he was denied his right to cross-examine the victim, as she did not testify at trial.  In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him.  U.S. Const. amend. VI.  The confrontation clause bars "admission of *testimonial* statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."  Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004) (emphasis supplied).  Statements are *nontestimonial* when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  Statements are *testimonial* when the circumstances objectively indicate that there is no such ongoing emergency, and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.  Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 2273-2274, 165 L.Ed.2d 224 (2006).  Mistaken application of the rule of Crawford is subject to harmless error analysis.    State v. Cunningham, 2004-2200 (La. 6/13/05), 903 So.2d 1110, 1119.
> The victim did not testify during the trial of this matter. During trial, counsel for the State requested the court's permission for Officer Jarrell to testify as to what the victim told him regarding what had just happened to her.  Defense counsel objected because, according to defense counsel, the victim's whereabouts were unknown and she was unavailable for cross-examination.  The court allowed Officer Jarrell's testimony under the excited utterance exception to the hearsay rule.  Under La.Code Evid. art. 803(2), "[a]

–  22  –

statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is "not excluded by the hearsay rule, even though the declarant is available as a witness."

Prior to the court's ruling, Officer Jarrell testified that upon separating the defendant and the victim, the victim was hysterical and bleeding. The victim began to tell Officer Jarrell what happened, but the defendant approached and had to be restrained by Officer Jarrell and other witnesses to the events, including Stephens. Officer Jarrell returned to the victim, who was still hysterical, and she told him what had just happened. We find no error in the trial court's admission of Officer Jarrell's testimony regarding the victim's nontestimonial statements, made during the continuing emergency situation.

Moreover, any Crawford violation would be harmless. Officer Jarrell's testimony concerning the victim's statements was cumulative of his own more detailed eyewitness testimony, as well as Stephens's more detailed eyewitness testimony, concerning the defendant's commission of the offenses at issue.

These assignments of error are without merit.[21]

As the state court noted, the United States Supreme Court has in recent years examined in great detail the protections afforded by the Confrontation Clause. The Supreme Court explained:

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), we held that this provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." A critical portion of this holding ... is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. See id., at 51, 124 S.Ct. 1354. It is the testimonial character of the statement that separates it from other

---

[21] Buckenberger, 984 So.2d at 759-60; State Rec., Vol. V of VI.

hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

Davis v. Washington, 547 U.S. 813, 821 (2006).  The Supreme Court continued:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Id. at 822.

In the instant case, Officer Jarrell interrupted petitioner while the criminal episode was still in progress.  After separating petitioner from the victim, Jarrell immediately questioned her as to what was occurring.

The first part of that questioning clearly poses no problem.  Jarrell testified:

Q.   Once you got her separated from him, did you observe her physical condition?

A.   Yes, sir.

Q.   Could you explain that?

A.   He face was scratched up.  She was bleeding from the face, bleeding from the elbow, bleeding from the knees.

Q.   How did she appear emotionally?

A.   Quite hysterical.

Q.   During the short period of time that she was there with you and still hysterical, did she explain to you what had just happened?

> A.    She was attempting to, until Mr. Buckenberger proceeded toward us.
>
> Q.    That is, he was handcuffed and began to approach you?
>
> A.    Correct.
>
> Q.    Could you explain what took place during that period of time?
>
> A.    I met him, put him back on the hood of the car, at which time he tried to head butt me several times and kick my legs, and that that point, he turned and tried to run. I grabbed his handcuffs behind his back, put my left arm around his neck, took him to the ground.[22]

It is evident that any of the victim's statements made at that point were elicited to resolve an ongoing emergency, and, therefore, were nontestimonial in nature and did not implicate the Confrontation Clause. That said, Jarrell did not specifically recount at trial the victim's statements made at that point.

Jarrell instead recounted the statements made by the victim in response to a *second* round of questioning. Those statements are arguably more problematic. Although the victim was still "excited, scared, and hysterical" at the time of that questioning, petitioner had already again been subdued and police reinforcements had arrived.[23] This gives the Court pause because, as in Davis,  "[w]hen the officer questioned [the victim] for the second time, and elicited the challenged statements, he was not seeking to determine  ... 'what is happening,' but rather 'what happened.' Objectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to

_____

[22]  State Rec., Vol. IV of VI, transcript of March 15, 2007, pp. 38-39.

[23]  State Rec., Vol. IF of VI, transcript of March 15, 2007, pp. 39-40.

investigate a possible crime ....” <u>Davis</u>, 547 U.S. at 830.  Accordingly, one could fairly argue that

the Confrontation Clause was implicated because the statements at that point were elicited seemingly

less to resolve an ongoing emergency than to establish past events potentially relevant to later

criminal prosecution.  Therefore, a court could perhaps find that although the initial statements were

nontestimonial, the subsequent statements “evolve[d] into testimonial statements” once Officer

Jarrell had “gained the information needed to address the exigency of the moment [and] the

emergency appears to have ended ....   It could readily be maintained that, from that point on, [the

victim’s] statements were testimonial, not unlike the ‘structured police questioning’ that occurred

in <u>Crawford</u> ....” <u>Davis</u>, 547 U.S. at 828-29.

However, that is not what the state courts decided in the instant case.  Rather, as

noted, they decided that the subsequent statements were also nontestimonial, having been made by

a still hysterical victim during (what was in that court’s view) a “continuing emergency situation.”

While this Court might well have reached a different conclusion if deciding this case in the first

instance, the AEDPA does not permit federal *habeas* courts to decide such issues *de novo*.  Rather,

because the state courts correctly identified the clearly established federal law governing petitioner’s

claim, this federal Court must look to whether the state courts applied that law in an objectively

unreasonable manner.  Even if the state courts arguably applied the law incorrectly, that is not

sufficient to grant relief, in that, again, “an unreasonable application is different from an incorrect

one.”  <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).  Under the facts of the instant case, which appear

to fall somewhere between factual scenarios which the United States Supreme Court have found to

be either clearly constitutional or clearly unconstitutional, this Court simply cannot say that the state

courts' decisions holding that there was no Confrontation Clause violation in this case were *objectively unreasonable*.

Moreover, this Court further notes that the state courts alternatively held that, even if there was a Crawford violation in this case, the error was harmless. Crawford violations are clearly subject to a "harmless error" analysis. Davis, 547 U.S. at 829; United States v. Harper, 527 F.3d 396, 401 & n.3 (5th Cir. 2008); United States v. Yi, 460 F.3d 623, 634 (5th Cir. 2006). However, "on habeas review, [federal courts] do not use the normal harmless error analysis. Instead, habeas petitioners are not entitled to relief based on a constitutional error unless the error had a substantial and injurious effect or influence in determining the jury's verdict." Oliver v. Quarterman, 541 F.3d 329, 341 (5th Cir. 2008) (citations, quotation marks, and brackets omitted), cert. denied, 129 S.Ct. 1985 (2009). The Fifth Circuit has explained:

> In conducting this analysis, the court considers: (1) the importance of the testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony; and (4) the overall strength of the prosecution's case against the defendant. Of these, the strength of the prosecution's case is probably the single most important factor in determining whether the error was harmless.

Clark v. Epps, 359 Fed. App'x 481, 485-86 (5th Cir. 2009) (citation and quotation marks omitted), cert. denied, 130 S.Ct. 3356 (2010); see also Jones v. Cain, 600 F.3d 527, 540 (5th Cir. 2010) ("An error is harmless ... when the evidence of the defendant's guilt is overwhelming.").

Here, it is safe to say that Jarrell's brief testimony concerning the victim's statements was cumulative (in that Jarrell and Stephens offered extensive eyewitness testimony concerning the same pertinent facts) and played little role in petitioner's convictions. On the other hand, it is

obvious that the convictions were based on the eyewitness testimony, especially the detailed and compelling testimony of Stephens.  In light of that fact and the overwhelming evidence of petitioner's guilt, a <u>Crawford</u> error, if any such error occurred, simply did not have a substantial and injurious effect or influence on the verdict and so was ultimately harmless under the applicable *habeas corpus* standard.

For all of the foregoing reasons, the undersigned recommends that petitioner's Confrontation Clause claim be rejected.

Double Jeopardy Clause

Petitioner also claims that his rights under the Double Jeopardy Clause were violated. The protection against double jeopardy is enshrined in the Fifth Amendment and made enforceable against the states through the Fourteenth Amendment.  <u>Benton v. Maryland</u>, 395 U.S. 784, 794 (1969); <u>Rogers v. Lynaugh</u>, 848 F.2d 606, 611 (5th Cir. 1988).  The United States Supreme Court has held:

> That guarantee has been said to consist of three separate constitutional protections.  It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.

<u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969) (footnotes omitted), <u>overruled in part on other grounds</u>, <u>Alabama v. Smith</u>, 490 U.S. 794, 802-03 (1989); <u>see also</u> <u>Department of Revenue v. Montana</u>, 511 U.S. 767, 769 n.1 (1994).

This was the first and only prosecution and punishment for these offenses which occurred on February 22, 2006.  Accordingly, the Double Jeopardy Clause simply is not implicated here, and petitioner's double jeopardy claim is patently frivolous.

Speedy Trial

Lastly, petitioner claims that he was denied his right to a speedy trial.  On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> In regard to the defendant's claim of violation of his right to speedy trial under La.Code Crim. P. art. 701, it is well-settled that, if prosecution is instituted after the statutory period has elapsed but before the hearing is held, the defendant is no longer entitled to release without bail.  State v. Varmall, 539 So.2d 45, 46 (La. 1989) (per curiam).  The defendant was arrested on February 22, 2006, and the bill of information herein was filed on April 27, 2006.  The defendant's motion to quash under Article 701 was denied following a hearing on June 30, 2006.  Thereafter, this court denied the defendant's application for supervisory writs concerning the denial of his motion to quash.  State v. Buckenberger, 2006-0784 (La.App. 1 Cir. 7/10/06) (unpublished).[24]

The United States Fifth Circuit Court of Appeals has explained:

> The right to a speedy trial is guaranteed by the Sixth Amendment and applies to state criminal proceedings through the Fourteenth Amendment.  A violation of the speedy trial right, if found, requires dismissal of the indictment.  In Barker [v. Wingo, 407 U.S. 514 (1972)], the Supreme Court prescribed several factors to be considered when evaluating a speedy trial claim:  (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant.  None of these factors is either necessary or sufficient to find a speedy trial violation; rather, they are related factors and must be considered together with such other circumstances as may be relevant.  The speedy trial inquiry therefore involves a difficult and sensitive

---

[24] Buckenberger, 984 So.2d at 758; State Rec., Vol. V of VI.

> balancing of these factors under the particular circumstances of a given case.

Goodrum v. Quarterman, 547 F.3d 249, 257 (5th Cir. 2008) (citations, footnotes, quotation marks, and brackets omitted), cert. denied, 129 S.Ct. 1612 (2009).

Regarding the first factor, the United States Fifth Circuit Court of Appeals has held: "If the length of delay crosses a threshold level regarded as presumptively prejudicial, the district court must make findings regarding the remaining three factors and balance all four factors.  This Circuit generally requires a delay of one year to trigger speedy trial analysis."  United States v. Lucien, 61 F.3d 366, 371 (5th Cir. 1995) (citation omitted).  In the instant case, petitioner's right to a speedy trial attached upon his arrest on February 22, 2006.  See, e.g., United States v. Greer, 655 F.2d 51, 52 (5th Cir. 1981) ("The constitutional assurance of a speedy trial attaches upon arrest, return of an indictment, or filing of an information, whichever first occurs.").  Because his trial did not commence until March 12, 2007, slightly more than one year later, the Court will consider the remaining factors.

Regarding the second factor, the reason for the delay, that factor clearly weighs in favor of the state.  The trial in this case was originally set for July 10, 2006, less than five months after petitioner's arrest.[25]  However, on July 6, 2006, *defense counsel* moved for a continuance in order to assess petitioner's competency.  That motion was granted, and the trial was reset for September 18, 2006.[26] On September 11, 2006, the matter was further delayed at *defense counsel's*

---

[25]   State Rec., Vol. I of VI, minute entry dated May 15, 2006.

[26]   State Rec., Vol. I of VI, minute entry dated July 6, 2006.

request until the competency issue could be resolved.[27]  After a lunacy hearing on October 3, 2006,

at which petitioner was found competent to stand trial, the trial was set for January 8, 2007.[28]  On

January 8, 2007, *defense counsel* moved for yet another continuance, and the trial was rescheduled

for January 12, 2007.[29]  On January 12, 2007, *defense counsel* again moved for a continuance, and

the matter was reset for March 12, 2007.[30]  Based on the foregoing, it is evident that all delays in this

matter were at the request of defense counsel, not the state.  "[D]elays ... attributable to the conduct

of the defendant weigh in favor of the state."  Goodrum, 547 F.3d at 258.

   The third factor, petitioner's assertion of his right to speedy trial, likewise weighs in

the state's favor.  Defense counsel did not file a speedy trial motion, and, indeed, could not, in that

all delays were attributable to his actions.  This Court notes that, despite being represented by

counsel, petitioner did file *pro se* motions, at least two of which referenced the right to a speedy

trial.  However, although the Louisiana Supreme Court has directed that the state's  "lower courts

must also accept and consider filings from represented defendants in a preverdict context whenever

doing so will not lead to confusion at trial," State v. Melon, 660 So.2d 466, 467 (La. 1995), that rule

clearly had little application here.  Petitioner's filings were largely indecipherable and nonsensical,

and his competency was so in doubt at the time the first such motion was filed that he was being

subjected to a lunacy hearing.  In light of the realities of this case and the challenges arising from

---

[27]  State Rec., Vol. I of VI, minute entry dated September 11, 2006.

[28]  State Rec., Vol. I of VI, minute entry dated October 3, 2006.

[29]  State Rec., Vol. I of VI, minute entry dated January 8, 2007.

[30]  State Rec., Vol. I of VI, minute entry dated January 12, 2007.

petitioner's obvious deficits, consideration of his *pro se* motions would have led to nothing but confusion, and the trial court was fully justified in giving them little attention.  Accordingly, this Court finds that petitioner's right to a speedy trial was not properly asserted.

Regarding the fourth and final factor, resulting prejudice, petitioner has made no showing whatsoever that he suffered such prejudice from the delays in this case.  Vague and conclusory allegations are clearly insufficient to constitute proof of the prejudice required to support a speedy trial claim.  See Goodrum, 547 F.3d at 262.[31]

Balancing these factors is relatively easy in this case.  The delay here was only slightly over one year, the minimum threshold to even require such balancing.  Moreover, the remaining factors all weigh in the state's favor for the reasons discussed.  Therefore, it is evident that petitioner's right to a speedy trial was not infringed and that this claim should be rejected.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Christopher Buckenberger be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

---

[31] The Court notes that the anxiety and concern an accused person may experience while awaiting trial is recognized as a form of prejudice which must be considered.  See Goodrum, 547 F.3d at 262-63.  However, petitioner has not alleged, much less brought forth evidence to show, that he suffered anxiety and concern sufficient to warrant a finding a prejudice.

court, provided that the party has been served with notice that such consequences will result from

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415,

1430 (5th Cir. 1996) (en banc).[32]

New Orleans, Louisiana, this twenty-fifth day of October, 2010.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[32] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.